CHAPMAN DERRICK & WRECKING CO. v. PROVIDENCE-WASHINGTON INS. CO. et al.

(District Court, S. D. New York. April 27, 1895.)

SALVAGE—EMPLOYMENT BY INSURERS—ACCOUNT OF WHOM IT MAY CONCERN—RULE 19.

Upon the sinking of a steamer in the North river under suspicious circumstances, the insurers employed the libelant to raise her, and not to permit owners to board or examine her till after their own examination. Upon some conflict as to whether the service was rendered "on account of whom it may concern," and upon the sole credit of the wreck, *held,* that the direct pecuniary interest of the insurers in the raising and examination, and their employment of the libelant, made them liable under Sup. Ct. Rule 19, in admiralty, for the salvage compensation of $5,000, as agreed upon.

This was a libel by the Chapman Derrick & Wrecking Company to recover salvage from the Providence-Washington Insurance Company and others, insurers of the steamer River Belle, for raising the said steamer, which had been sunk in the Hudson river.

Wing, Putnam & Burlingham, for libelant.

Butler, Stillman & Hubbard and Mr. Mynderse, for respondents.

BROWN, District Judge. The evidence leaves no doubt that the libelant undertook the raising of the River Belle as a salvage operation; that it was undertaken solely upon the direction of Capt. Baird, the general representative of one of the insurers, for the protection of their interests after the occurrence of a loss; that the raising of the River Belle, if practicable, was of special interest and concern to the insurers, in order to ascertain the cause of the loss, and the extent of their liability upon their valued policies of $20,000; and that the settlement which it enabled them to make, viz. for $2,500, in addition to $5,000 for raising the vessel, was very greatly to their pecuniary advantage; that the salvage service was worth at least the sum of $5,000, and in their settlement with the owner, Frederic Jansen, for $7,500, in full, the four insurance companies paid to him that sum upon his undertaking to pay $5,000 to the libelant for its salvage services, and received from him an agreement in writing to hold them harmless therefrom; that shortly afterwards, the respondents, upon being applied to for payment for the salvage service, referred the libelant to Jansen, who, on demand, evaded payment, and soon after died insolvent. The above libel was thereupon filed.

I do not think the respondents have established any legal defense to the libelant's demand. As insurers of the vessel upon valued policies in the sum of $20,000, the respondents were directly interested and "concerned" in the raising of the steamer, both for the ascertainment of the amount of the loss, as well as its cause, as I have already stated, and for the purpose of enabling them to settle as advantageously as possible with the insured.

The engagement of the salvage service was manifestly within the general powers of Capt. Baird; and his procurement of the libelant company to raise the boat, was upon the previous authority of at least two of the companies; and his proceeding was afterwards adopted and ratified by the other two, as well as the adjustment of the compensation at $5,000. The employment of the libelant was so exclusively in the interest of the respondents, that the unusual agreement was made that neither the insured nor any representative of his, should be admitted to the steamer while raising, or when raised, until after the respondents' examination of her. Such an employment would be sufficient to maintain a common-law action against the respondents; and it is within the express language of the nineteenth rule of the supreme court in admiralty, which provided that "in all suits for salvage the suit may be in personam against the party at whose request, and for whose benefit, the salvage service has been performed."

I do not perceive that the "sue and labor clause" in the policies at all affects the respondents' liability. It provides that such acts "shall not be considered a waiver or an acceptance of an abandonment, nor as affirming or denying any liability; but such acts shall be considered as done for the benefit of all concerned and without prejudice to the rights of either party." This clause deals with the rights of the parties to the policy; and the libelant was not a party to the policy. The insurers, as I have already said, were deeply "concerned" in the raising of the vessel, and in ascertaining the loss and its cause. So far as the sue and labor clause is concerned, the situation of the respondents is precisely the same as if they had raised the vessel immediately by their own hands, paying the charges incurred from day to day, instead of procuring the work to be done through the means of a contract with the libelant company to perform the service. As I have already said, the libelant in fact acted solely upon the request of the insurers; and if they had not considered it to their advantage or benefit to have the work done, the insurers would not have employed the libelant to do it.

The respondents' only means of escape from responsibility must be by proof that the libelant undertook the work solely on the credit of the wreck, and without a right in any event to any personal demand upon the respondents, even though it was successful. While there is some difference in the versions of the oral engagement, the preponderance of proof seems to me very clear that the libelant refused to engage in the work on these terms, and Capt. Baird does not, in fact, contradict this. For doing the work "on account of whom it may concern," even if the libelant had agreed to that, would not in the least have relieved the respondents from liability in a

case like the present, where the respondents were, in fact, most deeply interested and "concerned" in raising the vessel, engaged the work, and profited largely by it. Capt. Baird may have lacked authority to bind the companies to any specific salvage compensation; but he did not lack authority to engage the service. He did engage it; the four companies ratified it; they profited greatly by it, and themselves adjusted the compensation at $5,000; and I think they are legally bound to pay it.

Decree for $5,000, with interest and costs.